IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Don C. Day,<br><br>        Plaintiff,<br><br>vs.<br><br>Eastman Chemical Company and Eastman Chemical Company Termination Allowance Plan,<br><br>        Defendants. | C/A No. 3:13-cv-00588-JFA<br><br><br>**ORDER** |

I. **INTRODUCTION**

This matter comes before the court on a Motion for Summary Judgment by Defendants Eastman Chemical Company ("Eastman") and the Eastman Chemical Company Termination Allowance Plan ("Plan") (collectively, "Defendants") in this Employee Retirement Income Security Act (ERISA) dispute. Defendant DAK Americas, LLC ("DAK") was voluntarily dismissed on August 12, 2013. Don Day ("Plaintiff") brings this suit after a denial of benefits he claims were due to him under Eastman's Termination Allowance Plan. Plaintiff asserted four[1] causes of action against Defendants, but at oral argument dropped all claims other than equitable claims and claims for benefits due under the Plan—as well as attorney's fees—pursuant to 29 U.S.C. § 1132. Defendants argue, among other things, that Plaintiff failed to exhaust his administrative remedies, and that Plaintiff is not eligible for benefits under the Plan because he declined a comparable job offer from DAK. Plaintiff argues that he is owed Plan benefits in the amount of $88,584.86. For the reasons stated below, the court grants Defendants' motion for Summary Judgment.

---

[1] The fifth cause of action—aiding and abetting breach of fiduciary duty—was asserted only against DAK. DAK has been voluntarily dismissed.

1

## II. FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a former employee of Eastman, who worked at one of the company's South Carolina facilities for 41 years. During his employment with Eastman, Plaintiff participated in Eastman's Termination Allowance Plan. Relevant to this suit, the Plan provided benefits to eligible employees in the event the employee was terminated following a "Divestiture."[2] Under the terms of the Plan, an employee is ineligible to receive Plan benefits if the employee is offered a "comparable job" by the purchaser. In 2010, Eastman sold the facility where Plaintiff worked to DAK, and it is undisputed that this was a divestiture within the meaning of the Plan.

On January 19, 2011, DAK representatives offered Plaintiff a position with DAK in a sealed envelope ("First Offer"). Plaintiff refused this offer the following day and demanded Plan benefits, on the basis that the First Offer from DAK was not comparable to Plaintiff's job with Eastman. Plaintiff argued, by way of email to an Eastman Human Resources employee, that the First Offer was not comparable within the meaning of the Plan because it decreased his pay by more than 10 percent.[3] The First Offer was for $3,066.00 per pay period, a 10.012% decrease from Plaintiff's previous pay of $3,407.11 per pay period. DAK—after communications with Eastman—offered Plaintiff one additional dollar per pay period on January 25, 2011 ("Second Offer"), bringing the Second Offer within 10 percent of Plaintiff's previous pay. Plaintiff was informed by email that the amount of the First Offer was simply a "rounding issue." The Second Offer was not accepted by Plaintiff. Plaintiff's employment with Eastman was terminated on February 1, 2011.

---

[2] The Plan language defines a "divestiture" as "a sale or other disposition… by Eastman… of a division, business, function, facility, or unit or other group of assets that is designated as a Divestiture by the Board, a committee of the Board, the benefits Plan Committee or an officer of Eastman."

[3] An absence of a "comparable job" offer is what triggers benefits under the Plan in the event of a divestiture. But, Plaintiff's initial email claims to Eastman's Human Resources department and Defendant's argument both proceed on the definition of a different Plan term, "comparably paid position." A comparably paid position is "any job whose Pay Rate is within 10 percent of the highest Pay Rate held by an Employee during the preceding 12 months." What constitutes a comparable job is left largely in the discretion of Eastman according to the Plan.

About two months later, on April 5, 2011, Plaintiff's counsel sent a letter to Eastman demanding Plan benefits. On May 5, 2011, the Plan Administrator responded by letter that she interpreted the April 5 letter as Plaintiff's claim for benefits under the Plan. A claims decision letter, denying the claim because Plaintiff refused a comparably paid position, was then sent to Plaintiff on June 28, 2011. That letter stated, under a section titled "Benefit Claim Appeal Procedures," that Plaintiff was entitled to file an appeal of the claims decision within 60 days. No appeal was filed.

## III. ANALYSIS

In order to get to a determination on the merits in an ERISA suit, the Plaintiff must show that he exhausted internal plan remedies prior to filing suit, or that such effort would have been futile. The court will first address Plaintiff's claim that it would have been futile to pursue an appeal of the claim denial within Plan remedies, and will then briefly address Plaintiff's broadly asserted claim for equitable relief.

### i. Futility of Pursuing an Appeal

An ERISA welfare benefit plan participant must both pursue and exhaust plan remedies before gaining access to the federal courts. *Makar v. Health Care Corp.,* 872 F.2d 80, 82 (4th Cir.1989) (exhaustion of plan's remedies is "a prerequisite to an ERISA action for denial of benefits"). "[C]ourts may excuse a failure to exhaust administrative remedies 'where there is a lack of meaningful access to review procedures, or where pursuing internal plan remedies would be futile.'" *Schorsch v. Reliance Standard Life Ins. Co.*, 693 F.3d 734, 739 (7th Cir. 2012). The Fourth Circuit requires a "'clear and positive'" showing of futility … before suspending the exhaustion requirement" in ERISA suits. *Makar*, 872 F.2d at 83. Here, Plaintiff argues that it would have been futile for Plaintiff to submit any other appeals within the Plan because Plaintiff

had already made multiple requests for Plan benefits, and been denied Plan benefits at every turn. Plaintiff also argues that an appeal would have been futile because the Plan Administrator is an Eastman employee. From a legal standpoint, Plaintiff argues that futility is a factual determination and not appropriate for summary judgment in this case.

Defendants argue that Plaintiff was not denied access to the Plan's claims procedures, even if Eastman did not treat his initial communications to Human Resources as a claim for benefits. According to Defendants, Plaintiff's claim received a full and fair review by the Plan Administrator. Defendants argue that the full and fair review of Plaintiff's claims, along with notice of appeal procedures, illustrates that Plaintiff cannot make a "clear and positive" showing that an appeal would have been futile. The court agrees.

It is indisputable from the record that Plaintiff did not appeal from the June 28, 2011 claim denial letter. In that letter, Defendants notified Plaintiff—under a section titled "Benefit Claim Appeal Procedures"—that Plaintiff was entitled to file an appeal of the claims decision within 60 days. An appeal was not filed. Plaintiff now argues that the initial email sent to Eastman was his initial claim[4] and that subsequent communications—including the letter sent by counsel on April 5, 2011—were his appeal. Plaintiff further supports this argument by taking out of context one provision in the June 28, 2011 claim denial letter: "This is the final step in the appeal process, and the decision made by the Plan Administrator is final." In the context of the entire letter, however, it is clear that the provision means that an appeal from the June 28, 2011 claim denial letter is the final step in the appeal process. Therefore, the record is clear that Plaintiff did not exhaust his administrative remedies—a mistake fatal to his case in the Fourth Circuit, unless Plaintiff can make a "clear and positive" showing that an appeal would have been

---

[4] Defendants specifically informed Plaintiff in the May 5, 2011 letter that the April 5, 2011 letter from Plaintiff's counsel was being treated as Plaintiff's claim for Plan benefits.

futile.

The court finds no genuine issue of material fact as to the futility of an appeal within Plan remedies here. As discussed earlier, Plaintiff did request Plan benefits by email on January 20 and January 25, 2011, arguing that the First Offer was not comparable within the meaning of the Plan because it decreased his pay by more than 10 percent. Defendants responded by consulting with DAK, and on January 25, 2011,[5] DAK made the Second Offer, bringing the job offer from DAK within 10 percent of Plaintiff's previous pay. Plaintiff's counsel then sent a demand letter for Plan benefits on April 5, 2011. Defendants denied the claim by letter on June 28, 2011. Plaintiff was specifically notified of his right to appeal the June 28, 2011 claim denial and given procedures for pursuing such an appeal. Plaintiff was further notified that such an appeal was the final step to contest the claim decision within Plan remedies, and then Plaintiff would be entitled to file suit to contest the claim decision. Because Defendants resolved the issue presented by Plaintiff in the January 20 and January 25 email requests—that he was owed Plan benefits because he was not offered a job within 10 percent of his previous pay—and Plaintiff was specifically informed of his appeal rights in the June 28, 2011 claim denial letter, the court concludes that an appeal by Plaintiff would not have been futile. Therefore, Plaintiff's claims pursuant to 29 U.S.C. § 1132 fail as a matter of law.

ii. *Equitable Relief*

At oral argument, Plaintiff argued he was entitled to equitable relief from the court, even though equitable relief was discussed in Plaintiff's response brief primarily in relation to Plaintiff's fiduciary claims. However, Plaintiff dropped his claims for breach of fiduciary duties at oral argument, as well as his claims for interference and improper claims procedures. It was

---

[5] The Second Offer was communicated by email, after Plaintiff's earlier email request for Plan benefits on the same day.

unclear from Plaintiff's argument exactly what equitable relief he was requesting, although Plaintiff did mention reformation several times. The court refuses, however to rewrite the agreement between the parties under these circumstances.

Particularly, the court finds that the denial of Plaintiff's claim was reasonable within the meaning of the Plan. Plaintiff was clearly offered a job by DAK that the Plan Administrator, sitting in its discretionary position under the terms of the Plan, could have reasonably determined was a comparable job. *Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 359 (4th Cir. 2008) (In an ERISA case, "a discretionary determination will be upheld if reasonable."). Such circumstances do not merit equitable relief from the court—or relief under the ERISA case law—and would undermine the uniformity and predictability ERISA is intended to promote.

## IV.  CONCLUSION

Based on the foregoing, the court hereby grants Defendants' Motion for Summary Judgment in its entirety. The case is, therefore, dismissed *with prejudice*.[6]

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

October 15, 2013  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge

---

[6] The Plan's appeals process provided Plaintiff 60 days from which to appeal the June 28, 2011 claim denial, and no appeal was filed. Plaintiff filed this suit on January 24, 2013, well after the appeals period had expired. Where "'the opportunity to pursue … remedies under' the Plan's appeal process has expired … dismissal with prejudice is required." *Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 230 (4th Cir. 2005).